Claudia C. Bohorquez, Esq. (SBN 150647)
LAW OFFICES OF CLAUDIA C. BOHORQUEZ
5670 Wilshire Blvd., Suite 1800
Los Angeles, CA 90036
T. 818.430.1314
F. 818.450.0463

Email:  cbohorquez@bohorquezlawgroup.com

*Attorneys for Plaintiff*, TYPRICE FREEMAN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| TYPRICE FREEMAN, an individual,<br><br>              Plaintiff,<br><br>vs.<br><br>JULIAN MATA, an individual; BRANDON MORELAND, an individual; TONY ROMERO JR., an individual; JOSH GUERRY, an individual; COUNTY OF SAN BERNARDINO, a government entity; and DOES 1-10, inclusive.<br><br>              Defendants. | Case No.:<br><br>COMPLAINT FOR DAMAGES FOR CIVIL RIGHTS VIOLATIONS.  42 U.S.C. §1983 and State Claims<br><br>DEMAND FOR JURY TRIAL |

Come now Plaintiff, TYPRICE FREEMAN, and alleges as his complaint for violations of civil rights against defendants JULIAN MATA, BRANDON MORELAND, TONY ROMERO JR., JOSH GUERRY, COUNTY OF SAN BERNARDINO, and DOES 1 through 10, inclusive, as follows:

1

COMPLAINT FOR DAMAGES

**INTRODUCTION**

These claims arise from the unlawful actions of law enforcement to interfere with Mr. FREEMAN's constitutionally protected rights against unlawful search and seizure after being stopped and searched for no reason whatsoever, culminating in his prosecution without probable cause, twice, for a murder he did not commit, both times was acquitted, all in violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution. Mr. FREEMAN remained in jail for 16 months during the pendency of both trials unable to afford bond.

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343.  This is a civil rights action brought to redress alleged deprivations of constitutional rights arising under the laws of the United States, including 42 U.S.C. §1983, the Fourth and Fourteenth Amendments of the United States Constitution

2. Venue is proper in this Court under 28 U.S.C. §1391(b) because a substantial part of the incidents, events, and occurrences giving rise to the present action occurred in this district.

**PARTIES**

3. Plaintiff TYPRICE FREEMAN is an individual who was homeless at all times relevant to this action except during the time when he was wrongfully incarcerated from July 19, 2020 to November 15, 2021.

4. Defendant JULIAN MATA ("MATA") is an individual and on information and belief resides in the County of Los Angeles, California.  At all relevant times herein, MATA was a patrol officer employed by the San Bernardino Sheriff's Department ("SBSD") working on behalf of COUNTY OF SAN BERNARDINO ("COUNTY").  At all relevant times herein, MATA was acting

under color of law within the course and scope of his duties as an officer for SBSD.  MATA was acting with the complete authority and/or ratification of his principals including defendant COUNTY.

5.      Defendant BRANDON MORELAND ("MORELAND) is an individual and on information and belief resides in the County of Los Angeles, California.  At all relevant times herein, MORELAND was a patrol officer employed by the SBSD working on behalf of COUNTY.  At all relevant times herein, MORELAND was acting under color of law within the course and scope of his duties as an officer for SBSD.  MORELAND was acting with the complete authority and/or ratification of his principals including defendant COUNTY.

6.      Defendant TONY ROMERO, JR. ("ROMERO") is an individual and on information and belief resides in the County of Los Angeles, California.  At all relevant times herein, ROMERO was a detective employed by SBSD working on behalf of COUNTY.  At all relevant times herein, ROMERO was acting under color of law within the course and scope of his duties as a detective for SBSD.  ROMERO was acting with the complete authority and/or ratification of his principals including defendant COUNTY.

7.      Defendant JOSH GUERRY ("GUERRY") is an individual and on information and belief resides in the County of Los Angeles, California.  At all relevant times herein, GUERRY was a detective employed by the SBSD working on behalf of COUNTY.  At all relevant times herein, GUERRY was acting under color of law within the course and scope of his duties as a detective for SBSD.  GUERRY was acting with the complete authority and/or ratification of his principals including defendant COUNTY.

8.      Defendant COUNTY OF SAN BERNARDINO ("COUNTY") is a duly organized public entity, existing under the laws of the State of California with the capacity to be sued. COUNTY is responsible for the acts, omissions, policies, procedures, practices, and customs of its

various agents and agencies, including the SBSD and its agents and employees. At all relevant times, COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of SBSD and its employees and agents complied with the laws of the United States and the State of California.

9.      The true names and capacities of DOES 1-10 are unknown to plaintiff, who otherwise sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and capacities of these defendants when they have been ascertained. Each of the fictitiously named defendants is responsible in some manner for the conduct or liabilities alleged herein.  DOES 1-10 were at all relevant times herein employees for the COUNTY.  At the time of the incident, DOES 1-10 were acting under color of law within the course and scope of their duties as employees for the COUNTY.  DOES 1-10 were acting with the complete authority and/or ratification of their principal, defendant COUNTY.  At all times mentioned herein, each and every separate defendant was the agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

10.      On or about May 16, 2022, plaintiff timely served comprehensive claims for damages with the CITY OF VICTORVILLE and SAN BERNARDINO COUNTY pursuant to applicable sections of the California Government Code including §910.4.  The claims were rejected on June 1, 2022 and May 26, 2022 respectively.

11.      For actions under 42 U.S.C. §1983, courts apply the forum's statute of limitations for personal injury actions, along with the forum state's laws regarding tolling.  This includes Cal. R. App. I Emergency Rule 9(a), tolling statutes of limitation over 180 days, from April 6, 2020, until October 1, 2020 (178 days).  *See generally, Thompson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1024 (2004).

COMPLAINT FOR DAMAGES

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

12.     At all times herein mentioned, Plaintiff, Mr. FREEMAN was homeless, living on the streets of Victorville, CA, except for the times he was wrongfully incarcerated from July 19, 2020 to November 15, 2021.  He served in the U.S. Navy for 4 years, honorably discharged.  He had never been convicted of any crime.

13.     On or about Wednesday, July 15, 2020, Lori Kyler ("Lori") checked into a motel room, #136, at the Park Avenue Inn in Victorville, CA, for two nights.  She tested positive for Covid and was quarantining away from where she was living at the High Desert Homeless Services shelter in Victorville.  This was at the height of the Covid pandemic, pre-vaccine.

14.     On Friday July 17, 2020, around 10:40 a.m., Lori was found deceased on her bed in her motel room by a maintenance man and a member of the cleaning staff.

15.     Investigators from the SBSD arrived thereafter.  In a search warrant affidavit executed by SBSD Detective Chris Crosswhite on July 17, 2020, to search room 136, Lori's person, and her automobile, it stated that the motel "is a known location where drug activity takes place, including drug use, transportation, and sales… it is unknown at this time, whether the death of Kyler was drug related."  It did not say there were signs of a struggle.

### The Initial Stop, Detention, and Arrest by MATA and MORELAND

16.     On Sunday, July 19, 2020, around 4:00 a.m., Mr. FREEMAN was walking in a public area in Victorville.  He was carrying a backpack with personal belongings inside including his cellphones, cellphone chargers, scooter charger, social security card, I.D. card, and store receipts from purchases he had made in the last few days from Winco, Food 4 Less, and other places.  He was stopped by defendant MATA for no apparent reason.

5
COMPLAINT FOR DAMAGES

17.     Defendants MATA and his partner MORELAND were responding to an unrelated call for service at 14615 Palmdale Rd.  MATA saw Mr. FREEMAN walking in front of his patrol vehicle and started talking to him.  The conversation was recorded by MATA's belt audio recording device.

18.     MORELAND and other deputies came over to where MATA was talking with Mr. FREEMAN.

19.     The following are excerpts of the exchange that occurred:

MATA:       "They just my partners, my partners because they have nothing else to do, they wanna come over now….They see me here and they're like what's going on….This is Mr. Freeman…."

MATA:       [Responding to a deputy's question], **"No, he don't have anything on him, nothing. He's just walking the street minding his own."**

Deputy:     You got anything that's illegal on you then?

Freeman:    No, sir. No.

Deputy:     Like pipes, drugs, no?

Freeman:    No, I ain't got nothing.

Deputy:     Any weapons?

Freeman:    No, I just went to the store.

Deputy:     …Can I check you out man?

Freeman:    Backpack?  Take it off for me, man.  There's nothing illegal in there...

Deputy:     No, I can check?

Freeman:    Yeah, you can check.

Deputy:     I'm going to pat you down, ok?

Freeman:    Ok.

Deputy:     He got money?

MATA:       Yup.

Freeman:    Who me?

MATA:       Yup.

MATA:       …Who's Lori Kyler? [reading the name on an EBT card]

Freeman:    Oh, that's a friend's.

MATA:       A friend's?

MATA:       You served in the Navy?  I served in the army…. have a seat.

Freeman:    …Hey what about the, what about my homegirl card.  Am I going to get it back to her?

MATA:       You're not Lori, bro.  You can't get Lori's card.

Freeman:    o.k.

MATA:       …. You tap the wrong pin in the store?

Freeman:    Yeah.

MATA:       Well, it's been reported stolen, so unfortunately you have to catch a ride for this, right?

Freeman:    I have to go to jail for this?

6

COMPLAINT FOR DAMAGES

MATA:      Yeah, it's stolen, it's a felony.

20.      MATA and MORELAND knew the EBT card was never reported stolen.

21.      MATA lied to Mr. FREEMAN when he told him the card had been reported stolen and he affirmed that later at trial.

22.      Mr. FREEMAN told MATA and MORELAND that Lori was his friend and that she let him borrow and hold onto the [EBT] card.  He stated that if it was reported stolen, it could be because he entered the wrong pin number earlier at a store. He also asked for it back so he could return it to Lori.

23.      Any alleged consent to the search of Mr. FREEMAN's person and backpack was based on coercion and/or intimidation in the presence of several armed deputies.

24.      MATA and MORELAND arrested Mr. FREEMAN and took him to the High Desert Detention Center where he was booked for possession of stolen property under Penal Code 496(a). They also took his backpack and the contents inside.

25.      Mr. FREEMAN was shocked that he could be arrested for possessing the EBT card his friend had loaned him.

26.      At the station, MATA took photos of Mr. FREEMAN.  MATA did not document in his booking sheet any injuries such as scratches or scars.  Nor did he document the backpack and its contents or book it and all of its contents into evidence.

27.      MATA would later testify at the FIRST TRIAL there were "a bunch of miscellaneous items" in the backpack and he could not recall all the items.  He could not recall if there were other phones inside or store receipts.  Regarding the backpack, including its contents, he claims he "placed it in safekeeping."  MATA knew the backpack was destroyed.  It and its contents were never produced to defense counsel or returned to Mr. FREEMAN.

28.    At the time of his arrest, Mr. FREEMAN had not slept in days, he slept on the concrete, and this affected his mental alertness.

### The Interrogation by GUERRY and ROMERO and Murder Charge

29.    After Mr. FREEMAN's warrantless arrest in the early morning of July 19[1], he was interrogated by defendants GUERRY and ROMERO later that afternoon.

30.    From the beginning, Mr. FREEMAN told them the EBT card was given to him by a friend.  Initially, Mr. FREEMAN sought to protect his friend Lori for loaning him her EBT card as he believed the government could stop deposits going into her EBT account, and thus tried to protect her identity.

31.    Eventually, he told the detectives he went to the store with his female friend earlier in the day (the day she checked into the motel Wednesday July 15) in her van and they purchased beers. He told them he stayed with her at the motel the day she arrived there, Wednesday July 15, and spent some time together, but then he left in the early morning hours.  He stated he never "slept" there all night.  He gave them the room number, 136.  He said he returned the next morning, Thursday, July 16, to retrieve his scooter around 10 a.m.  He spent a couple of hours there in the morning and left around noon, and never saw her again after that.  He stated that the manager saw him on the premises as he was leaving and ran him off.  His female friend was Lori.  Mr. FREEMAN was sleep deprived at the time of his interview and had a hard time collecting his thoughts around the exact times of these events, but he gave an accurate chronology of his time with Lori.

32.    Once defendant GUERRY told Mr. FREEMAN Lori was dead, he became upset over the news of her death.  This was the first time he learned his friend had died.

---

[1] All dates are in 2020 unless otherwise indicated.

8

COMPLAINT FOR DAMAGES

33.     Immediately, GUERRY accused Mr. FREEMAN of killing and raping her saying, "we have video of you leaving the room and nobody leaving the room after."   "We know you killed Lori, what we wanna know is why?" and then accused him of raping his friend.  GUERRY continued, "we know you killed her…. We have evidence, lots of it."   There was no video and no rape evidence.

34.     ROMERO told Mr. FREEMAN he raped her and left her dead in the same position he had sex with her.  Mr. FREEMAN asked if she was found "with her clothes off?"  ROMERO changed the subject because Lori was found deceased with clothes on.

35.     GUERRY told Mr. FREEMAN to explain how "your blood ended up on the sheets after [Lori] socked you in the face cuz you were holding a pillow over her head;" that his hair was on the bed because she allegedly pulled his hair out; that his semen was in her vaginal area; that his handprints were in blood on the pillow that he allegedly put over her face.  Both GUERRY and ROMERO told him his DNA was all there.  Mr. FREEMAN never denied he spent time with Lori at her motel room.

36.     After spending some time with Lori on Wednesday July 15, Mr. FREEMAN left around 2 a.m., now July 16.  He went back to his regular place on the street near the motel and slept for a while.  He then went to visit other homeless friends where they camp to do some trading.  On the morning of Thursday July 16, Lori texted Mr. FREEMAN that she needed the key to the motel room.  Mr. FREEMAN returned to the motel room around 10 a.m. to return the keycard.  He could not get inside because she had already got a new one issued.  He knocked on the door and she let him inside.  Mr. FREEMAN stayed two hours, from around 10 a.m. to noon.  When he left, Lori was alive.  The manager of the motel ran him off as he was leaving the premises.  He never returned to the motel and never saw Lori again.

9

COMPLAINT FOR DAMAGES

37.     In fact, there was no surveillance video as described by GUERRY.  There were no injuries to Mr. FREEMAN that could be a source of any blood at the scene. There was no blood of Mr. FREEMAN at the scene.  There was no DNA analysis establishing that the hair at the scene was Mr. FREEMAN's.  There were no handprints on the pillow.  There was no semen of Mr. FREEMAN at the scene.  No DNA test had been performed that established Mr. FREEMAN was a contributor of blood or semen at the scene.  ROMERO and GUERRY did not know how long Lori had been dead when she was found, nor did they know one way or the other if anybody else went into the motel room besides Lori and Mr. FREEMAN.  They did not check Lori's medical history and whether she could have died of a heart attack or even Covid.

38.     Mr. FREEMAN vehemently and repeatedly denied the accusations by ROMERO and GUERRY that he killed his friend or that he raped her.  He also told the detectives to pull up footage from around the area that would show him after the last time he saw her on Thursday July 16 around noon time especially at the 76 gas station where he took a nap on the sidewalk; he told them Lori loaned him her EBT card and he used it to make purchases.

39.     Mr. FREEMAN told detectives he spent some nights with another friend later after he left Lori from Thursday July 16 until Saturday morning [July 18].   They had her number and never checked out his alibi.

40.     At the end of the interrogation, GUERRY told Mr. FREEMAN, "Typrice, you're going to be booked for murder."  Typrice asked how that was possible and GUERRY responded, "Because you killed her."  Typrice again vehemently denied it.   He was booked for Murder under Penal Code 187(a), a felony, on July 19.  Murder "is the unlawful killing of a human being, or a fetus, with malice aforethought."  PC 187(a).

10
COMPLAINT FOR DAMAGES

41.    Two days later, on Tuesday July 21, the criminal case was filed, District Attorney and Public Defender were notified, and arraignment hearing held.  Mr. FREEMAN was denied release on his own recognizance and a $1,000,000 bail was set.  He could not post this bail and remained in custody.  This criminal filing was not the result of an independent determination on the part of the prosecutor.  It was rammed through by those defendants who participated in the investigation and filed a report that resulted in the initiation of proceedings.  *Smiddy v. Varney,* 665 F.2d 261, 266-268 (9th Cir. 1981).

42.    Defendants had no reasonable suspicion of "malice aforethought" by Mr. FREEMAN against his friend to justify a murder charge.  They had no reasonable suspicion of any act committed by Mr. FREEMAN that caused the death of Lori.

**Other Facts**

43.    Lori was 50 years old, morbidly obese weighing approximately 320 pounds, and had an underlying history of congestive heart failure.  She spent four days at Victorville Global Medical Center, April 23-27, 2020, after arriving to the Emergency Room in an ambulance, reporting a 2-day history of chest pain with lightheadedness, shortness of breath, and palpitation.  Lori declined a coronary angiographic study recommended by her doctor who explained the consequences of doing so and the need for outpatient cardiology follow-up.

44.    The SBSD coroner could not determine Lori's cause of death or manner of death.

45.    The only DNA testing performed by a Criminalist at SBSD was from samples taken from Mr. FREEMAN's fingernails, Lori's fingernails, a pillow case, and a vaginal swab.

46.    A vaginal swab was tested for DNA and, while "sperm fraction" was detected, it excluded Mr. FREEMAN as a contributor.

47.    DNA testing of Mr. FREEMAN's left and right-hand nail scrapings was negative for blood.  Mr. FREEMAN had no injuries at the time of his arrest from which blood could have come out.

48.    The SBSD Criminalist testified at the FIRST TRIAL, based on the data, there could have been more than 2 contributors to the DNA collected at the motel room.

49.    Mr. FREEMAN had an alibi.  His friend "Denise" with whom he stated at the FIRST TRIAL he spent from around 6:30 p.m. Thursday July 16 to Saturday morning July 18.  The detectives never called her and the prosecution did not call her as a witness.

50.    No DNA testing was performed on the beer cans, cigarette butt located near Lori's body, and bedsheets found in the room.

51.    Mr. FREEMAN'S FIRST TRIAL began June 8, 2021, almost a year after he was arrested.  Mr. FREEMAN was tried for Murder and Involuntary Manslaughter under Penal Code 192(b), a felony.

52.    On July 8, 2021, the jury found Mr. FREEMAN "Not Guilty" of Murder.  They could not reach a decision on the Involuntary Manslaughter charge.

53.    Had Mr. FREEMAN been convicted of Murder he could have received life in prison.

54.    Rather than release him from custody, prosecutors arraigned Mr. FREEMAN July 22, 2021, on the Involuntary Manslaughter charge again.  He was denied release on his own recognizance and could not pay the bail amount.  He remained in custody.

55.    The SECOND TRIAL began October 25, 2021.

56.    On November 15, 2021, the jury found Mr. FREEMAN "Not Guilty" of Involuntary Manslaughter.  A release order was issued that day and Mr. FREEMAN was released from custody shortly thereafter.

COMPLAINT FOR DAMAGES

57. Had Mr. FREEMAN been convicted of Involuntary Manslaughter, he could have received up to 4 years in prison.

58. Reasonable or probable cause means such a state of facts as would lead a person of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion of the guilt of the accused. *People v. Mower*, 28 Cal.4th, 457, 473 (2002). There was no probable cause that Mr. FREEMAN committed an act of murder at the time he was booked on that charge immediately after his interrogation July 19, 2020, even accidentally, and therefore no reason to stop looking for any other suspect.

59. Mr. FREEMAN was arraigned on these charges two days after he was arrested.

60. Mr. FREEMAN was overcharged and a victim of the wholly unfounded charge of murder. Mr. FREEMAN was charged for murder and involuntary manslaughter when the defendants did not know anything about Lori's death – the detectives did not know her medical history and could not say whether or not she had a heart attack; they knew she had Covid but did not know if that killed her; the pathologist had told defendant ROMERO there was no opinion as to the manner or cause of death; and ROMERO admitted he did not know how Lori died. This was known before the FIRST TRIAL and never changed.

61. ROMERO and GUERRY never conducted a proper investigation as they zeroed in on Mr. FREEMAN from the moment he was taken in by MATA and MORELAND after they found the EBT card. They never spoke to the manager to verify when he had run Mr. FREEMAN off the premises, they never considered his alibi and they had her telephone number, they never checked the surveillance video from the area where Mr. FREEMAN told them he slept after he left Lori the last time. They never investigated Lori's adult son as a suspect with whom text messages show they had been arguing and his cellphone location showed him near the motel in the crucial time before her

13
COMPLAINT FOR DAMAGES

death.  They never investigated the manager of the motel as a suspect and his strange behavior - he told police he [oddly] called Lori's room several times on the morning of Friday July 17 to remind her that she had to check out at 11 a.m. or pay more money to stay longer, and at 10:30 a.m. *(30 minutes before her check out time)* sent a maintenance man to unlock Lori's room and enter it to see if she was inside or had already left, while her red van which they knew to be hers, was still parked outside, and then discovered her deceased body around 10:39 a.m.  They never checked the stores where Mr. FREEMAN made purchases.  They destroyed or concealed the receipts of his purchases with her card and others along with his backpack and never turned them over to defense counsel or the prosecutor who could have used them to corroborate Mr. FREEMAN's whereabouts in the hours before Lori was found deceased.  Nor did ROMERO and GUERRY consider the receipts as evidence in their own investigation to corroborate where Mr. FREEMAN was during crucial hours before Lori was found deceased, and did not turn them over to the prosecutor.

62.     The prosecutor did not exercise independent judgment when she filed murder and involuntary manslaughter charges against Mr. FREEMAN scarcely two days after he was arrested, nor after her prosecution of Mr. FREEMAN for a re-trial of the involuntary manslaughter charge.

63.     The coroner, Dr. Brian Hutchins, employed by SBSD, performed an autopsy of Lori on July 28.

64.     The coroner assigned her time of death to be 10:42 a.m. Friday July 17.  Lori's son last spoke to her via cellphone around 10:45 p.m. on Thursday, July 16.

65.     At the FIRST TRIAL, the coroner testified he could not determine Lori's manner of death or cause of death.  He testified there was no trauma to her throat or neck area, internal or external.  There was no blunt force trauma, no penetrating trauma, and there were no injuries that would indicate an open source of blood.  As for nonfatal blunt force injuries, such as scrapes and

14

COMPLAINT FOR DAMAGES

abrasions, the coroner stated he had no idea when or how those could have occurred. He stated that a person could die of heart failure without having a heart attack. He stated that morbid obesity was "unhealthy," meaning one could die.

66. The coroner further testified that he started his autopsy with the presumption of a homicidal type of death because of the presence of a pillow at the scene over Lori's face. However, he could not rule out or rule in, the possibility of "smothering" as a manner or cause of death. He stopped the analysis there. He did not continue the analysis to determine any accidental, suicidal, or natural cause of death. He acknowledged that these were other causes of death which could have happened but he did not analyze her body for those. He testified at the FIRST TRIAL that even though he could have continued his analysis to determine if the death was accidental such as drug overdose, or other accidental death, or suicide, or due to natural disease such as morbid obesity and heart failure, he stopped at "smothering" as a possibility. He even acknowledged she could have died naturally and a pillow placed over her face after her death. He stated that police officers or detectives were present at the autopsies, and he had conversations with them there.

67. No DNA analysis was ever performed on the "hair" that was found at the scene where Lori died, only that it "looked like" Mr. FREEMAN's.

68. There was no foundation established at the FIRST TRIAL as to who viewed Lori's body first and whether or not the pillow was moved or placed on Lori's face by whoever got there first.

69. The same flimsy investigation by defendants and lack of probable cause were the basis of the prosecutions of Mr. FREEMAN in the FIRST TRIAL and the SECOND TRIAL.

COMPLAINT FOR DAMAGES

## FIRST CAUSE OF ACTION

**Deprivation of Civil Rights 42 U.S.C. §1983 – Illegal Stop, Arrest without Probable Cause False Arrest, False Imprisonment, Fourth Amendment**

**(Against MATA, MORELAND, ROMERO, GUERRY, COUNTY, and DOES 1- 5)**

70.     The allegations contained in paragraphs 1-69 are incorporated herein by reference as if set forth here in full.

71.     The Fourth Amendment of the United States Constitution guarantees all persons the right to be free from unreasonable searches and seizures, including the right to be free from arrest without probable cause. 42 U.S.C. §1983 provides a private right of action for conduct which violates this right.  To the extent a further ground for this cause of action can be stated under the Fourteenth Amendment Due Process clause of the United States Constitution, that ground is also asserted.

72.     Defendants MATA, MORELAND, ROMERO, and GUERRY acted under color of law at all times herein mentioned.

73.     Defendants MATA and MORELAND stopped Mr. FREEMAN for no reason and searched his person and his backpack.  Before asking if they could search him and pat him down, MORELAND asked MATA "what was up" and MATA responded, "No, he don't have anything on him, nothing.  He's just walking the street minding his own business."  When they searched him anyway, they found his friend Lori's EBT card in his pocket and accused him of possessing stolen property.  This set into motion his criminal prosecutions.

74.     By MATA's own admission, he and MORELAND knew or should have known they had no reason to stop Mr. FREEMAN, let alone search him, as they were not witnessing him commit a crime, and they did it anyway.  There was no probable cause to search him.

COMPLAINT FOR DAMAGES

75. ROMERO and GUERRY falsely accused Mr. FREEMAN of murdering and raping his friend and their investigation was non-existent before they decided to book him for murder and recommend the charge for prosecution resulting in the FIRST TRIAL.

76. There was even less evidence and no probable cause to pursue the Involuntary Manslaughter charge again at the SECOND TRIAL as described herein.

77. MATA, MORELAND, ROMERO, and GUERRY and each of them, were motivated by bad faith and their conduct was done with deliberate indifference to and/or reckless disregard of plaintiff's civil rights violating Mr. FREEMAN's personal liberty interest in freedom from restraint.

78. The actions of MATA, MORELAND, ROMERO, and GUERRY constituted deprivations of Mr. FREEMAN's personal liberty and right to be secure in his person against unreasonable searches and seizures as guaranteed to him under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

79. MATA and MORELAND caused, allowed, consented to, and/or personally participated in the events which led to the unlawful search and seizure of Mr. FREEMAN's person and property and are jointly and severally liable for the damages caused to him.  ROMERO and GUERRY caused, allowed, consented to, and/or personally participated in the events which led to the unlawful arrest and seizure of Mr. FREEMAN's person and seizure of his property and are jointly and severally liable for the damages caused to him.  Each defendant engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

80. Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, ROMERO, and GUERRY pursuant to section 815.2(a) of the California Gov't. Code

COMPLAINT FOR DAMAGES

which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

81.     Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial.

82.     As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN was falsely imprisoned for 2 days the before the first arraignment and 14 days before the second arraignment, unable to post the bail amount, suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of enjoyment of life, which have caused plaintiff to sustain damages in a sum to be determined at trial.

83.     The conduct of MATA, MORELAND, GUERRY, and ROMERO was willful, wanton, malicious, and done with an evil motive and intent or a reckless disregard for the federally protected rights of Mr. FREEMAN and constitutes the type of despicable conduct that no civilized society should be forced to endure and therefore warrants the imposition of exemplary and punitive damages. *Smith v. Wade,* 461 U.S. 30 (1983).

84.     By reason of the foregoing allegations, plaintiff was required to retain counsel to institute and prosecute this action and is entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988.

**SECOND CAUSE OF ACTION**

**Violation of Civil Rights 42 USC §1983 – Malicious Prosecution
(California Law and Fourth Amendment)**

**(Against MATA, MORELAND, ROMERO, GUERRY, COUNTY and DOES 1-5)**

85.     The allegations contained in paragraphs 1-69 are incorporated herein by reference.

COMPLAINT FOR DAMAGES

86.     42 U.S.C. §1983 creates a private cause of action against individuals who, acting under color of state law, violate federal or statutory rights.

87.     A malicious prosecution claim under §1983 may be brought on the grounds of Fourth Amendment violations.  Malicious prosecution with the intent to subject a person to denial of constitutional rights is cognizable under §1983. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1069 (9th Cir. 2004).  The relevant elements of the California common law tort of malicious prosecution are incorporated into an analysis under §1983.  *Id.* at 1066.  Malicious prosecution actions are not limited to suits against prosecutors but may be brought, as here, against other persons who have wrongfully caused the charges to be filed.  *Id.*

88.     Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed.  *Awabdy* at 1066.  The presumption of prosecutorial independence does not bar a subsequent §1983 claim against state or local officials who improperly exerted pressure on the prosecutor, knowingly provided misinformation to him/her, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings.  *Awabdy* at 1067.  Here, these defendants participated in and contributed to the decision to file the criminal charges against Mr. FREEMAN without even the most basic investigation.  Mr. FREEMAN was arraigned scarcely 2 days after his arrest.  The criminal filing was not the result of an independent determination on the part of the prosecutor.  It was rammed through by those defendants who participated in the investigation and filed a report that resulted in the initiation of proceedings, and thus MATA, MORELAND, ROMERO, and GUERRY are liable for Mr. FREEMAN's damages.  *See, Smiddy v. Varney,* 665 F.2d 261, 266-268 (9th Cir. 1981).  ROMERO and GUERRY rammed the criminal filing through by their knowingly wrongful and bad faith conduct as described herein and

19

COMPLAINT FOR DAMAGES

pressuring the prosecutor to file these unsubstantiated charges such that she could not exercise her independent judgment, did not have time to exercise her independent judgment.  The institution of criminal charges did not break the chain of causation so that further damages are not attributable to the false arrest and false imprisonment.  *Asgari v. City of Los Angeles,* 15 Cal.4th 744, 754 (1997).

89.     The prior criminal proceedings against Mr. FREEMAN terminated in acquittals, and in one instance a hung jury, and thus were favorable terminations in his favor.  To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under §1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction.  *Thompson v. Clark*, 142 S.Ct. 1332 (2022).

90.     MATA, MORELAND, ROMERO, and GUERRY initiated criminal proceedings against Mr. FREEMAN without probable cause on the basis of their intentional and knowingly false accusations, and pursuit of an unfounded criminal case, against Mr. FREEMAN, and other malicious conduct as described herein which resulted in the FIRST TRIAL.

91.     There was even less evidence or probable cause to pursue the Involuntary Manslaughter charge for the second time at the SECOND TRIAL as described herein, and the prosecution went forward anyway.

92.     At all times herein mentioned, MATA, MORELAND, ROMERO and GUERRY acted with malice and without probable cause and did so for the purpose of denying Mr. FREEMAN his constitutional rights to life, liberty, property, and his personal interest in freedom from unjustifiable litigation.

93.     The criminal proceedings against Mr. FREEMAN initiated by MATA, MORELAND, GUERRY, and ROMERO were undertaken in bad faith on the basis of their intentional and knowingly false accusations, vindictiveness, lack of evidence, and other malicious conduct.

COMPLAINT FOR DAMAGES

94.     The prosecutor did not exercise her (rebuttable) independent judgment to file criminal charges against Mr. FREEMAN.  There was no time for her to consider the scant evidence and make an independent judgment not based on the skewed information given to her by defendant police officers and pressure from them to prosecute.  The institution of criminal charges by the prosecutor did not break the chain of causation so that further damages are not attributable to the false arrest and false imprisonment. *Asgari v. City of Los Angeles,* 15 Cal.4th 744, 754 (1997).

95.     Plaintiff may recover damages for confinement imposed pursuant to legal process (i.e., post arraignment).  Plaintiff may recover in addition to general damages, "compensation for any arrest or imprisonment, including damages for discomfort or injury to his health, or loss of time and deprivation of society. *Heck v. Humphrey*, 512 U.S. 477, 484 (1994).

96.     Defendants caused, allowed, consented to, and/or personally participated in the events which led to the prosecution of Mr. FREEMAN twice (FIRST TRIAL, SECOND TRIAL) and are jointly and severally liable for the damages caused to him.  Each defendant engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

97.     Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, GUERRY and ROMERO pursuant to section 815.2(a) of the California Gov't. Code which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

98.     As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN spent 484 days behind bars, unable to post the bail amount, was wrongfully prosecuted twice, suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of

enjoyment of life, damage to reputation which have caused plaintiff to sustain damages in a sum to be determined at trial.

99.    The conduct of defendants MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 was willful, wanton, malicious, and done with an evil motive and intent or a reckless disregard for the possibility that their actions would violate the federally protected rights of Mr. FREEMAN and constitutes the type of despicable conduct that no civilized society should be forced to endure and therefore warrants the imposition of exemplary and punitive damages. *Smith v. Wade,* 461 U.S. 30 (1983).

100.    By reason of the foregoing allegations, plaintiff was required to retain counsel to institute and prosecute this action and is entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1988.

### THIRD CAUSE OF ACTION

### Violation of Civil Rights 42 U.S.C. §1983 – Concealment of Evidence

### (Against ROMERO, GUERRY, COUNTY, and DOES 1 to 5)

101.    The allegations contained in paragraphs 1-69 are incorporated herein by reference.

102.    ROMERO, GUERRY, and DOES 1-5, while acting under color of law, deprived Mr. FREEMAN of his civil rights, more particularly, his right to due process of law, by distorting evidence and concealing evidence (specifically all of the items in his backpack including receipts) from reports that resulted in depriving him of his liberty because they set in motion a reasonably foreseeable chain of events that led to his being charged with murder without probable cause and two criminal prosecutions.

103.    Defendants acted with deliberate indifference to and/or reckless disregard of Mr. FREEMAN's rights or for the truth.

COMPLAINT FOR DAMAGES

104.    The constitutional source against using manipulated evidence or concealing evidence is primarily the due process clause of the Fourteenth Amendment, and Plaintiff's due process rights were violated by the conduct alleged herein.  Plaintiff brings this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiff's right to be free from manipulated evidence being used against him or concealed evidence that led to a wrongful criminal prosecution, is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

105.    ROMERO, GUERRY, and DOES 1-5 were each jointly and severally responsible for the conduct alleged herein. Each engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

106.    Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, ROMERO, GUERRY and DOES 1 to 5 pursuant to section 815.2(a) of the California Gov't. Code which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

107.    As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN was wrongfully prosecuted twice, suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of enjoyment of life, damage to reputation which have caused plaintiff to sustain damages in a sum to be determined at trial.

108.    The conduct of defendants ROMERO, GUERRY, and DOES 1-5 was willful, wanton, malicious, and done with an evil motive and intent or a reckless disregard for the federally protected rights of Mr. FREEMAN and constitutes the type of despicable conduct that no civilized society

should be forced to endure and therefore warrants the imposition of exemplary and punitive damages. *Smith v. Wade,* 461 U.S. 30 (1983).

109.   By reason of the foregoing allegations, plaintiff was required to retain counsel to institute and prosecute this action and is entitled to a reasonable sum for attorney's fees pursuant to 42 U.S.C. §1983.

**FOURTH CAUSE OF ACTION**

**California Bane Act – Civ. Code §52.1 – False Arrest, False Imprisonment –**

**((Against MATA, MORELAND, GUERRY, ROMERO, COUNTY and DOES 1-5)**

110.   The allegations contained in paragraphs 1-69 are incorporated herein by reference.

111.   Defendants MATA, MORELAND, GUERRY, and ROMERO and DOES 1-5 acted under color of law at all times herein mentioned.   They were acting within the scope of their duties as employees of COUNTY when they wrongfully caused Mr. FREEMAN to be arrested, put in jail, and subjected to criminal felony charges due to coercion, intimidation, and threats in violation of Civil Code §52.1 (Tom Bane Civil Rights Act).

112.   The conduct of defendants alleged herein constituted interference (or attempted interference) by threats, intimidation, or coercion, with the exercise of enjoyment by Mr. FREEMAN of his rights secured by the Constitution or laws of the State of California, including interference with rights to be secure in his person and free from unlawful arrest under the Cal. Const. Art. 1, sec. 13 as well as Cal. Civ. Code §43, and Fourth Amendment of the U.S. Constitution.

113.   Despite having no reasonable evidence, circumstantial or otherwise, to continue to prosecute Mr. FREEMAN after he was acquitted in the FIRST TRIAL July 8, 2021, he was retained in custody, charged again and arraigned again on July 22, 2021, unable to post bail, and resulting in continued incarceration before he was acquitted again.   His false imprisonment lasted 14 days.

24

COMPLAINT FOR DAMAGES

114. The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer…, or directly against a public entity that employs a peace officer or custodial officer under this section [Civil Code §52.1 – Tom Bane Civil Rights Act].

115. Defendants' actions constituted deprivations of Mr. FREEMAN's rights to life, liberty, or property without due process of law in violation of the California Constitution and law.  In doing the acts herein alleged, MATA, MORELAND, ROMERO, and GUERRY acted maliciously and with the intent to deprive Mr. FREEMAN of his constitutional rights.  Their actions from July 19, 2020 forward were the driving force of the FIRST TRIAL and SECOND TRIAL.

116. At all times herein mentioned, MATA, MORELAND, ROMERO, and GUERRY acted for the purpose of depriving Mr. FREEMAN of his specific constitutional rights not to be deprived of his substantive due process rights of life, liberty, or property without due process of law.

117. Defendants caused, allowed, consented to, and/or personally participated in the events which led to Mr. FREEMAN's unlawful arrest and the consequences thereof and are jointly and severally liable for the damages caused to him.  Each defendant engaged in, knew or should have known of the unconstitutional conduct alleged herein and failed to prevent it, which each had a responsibility to do, and each ratified, approved or acquiesced in it.

118. Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 pursuant to section 815.2(a) of the California Gov't. Code which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

119. As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering,

COMPLAINT FOR DAMAGES

anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of enjoyment of life, damage to reputation which have caused plaintiff to sustain damages in a sum to be determined at trial.

120.    The conduct of defendants MATA, MORELAND, ROMERO, GUERRY and DOES 1-5 was willful, wanton, malicious, and done with an evil motive and intent or a reckless disregard for the possibility of violating the federally protected rights of Mr. FREEMAN and constitutes the type of despicable conduct that no civilized society should be forced to endure and therefore warrants the imposition of exemplary and punitive damages. *Smith v. Wade,* 461 U.S. 30 (1983).

121.    By reason of the foregoing allegations, plaintiff was required to retain counsel to institute and prosecute this action and is entitled to a reasonable sum for attorney's fees pursuant to the Bane Act.

## FIFTH CAUSE OF ACTION

### California Bane Act – Civ. Code §52.1 – Malicious Prosecution

### (Against MATA, MORELAND, ROMERO, GUERRY, COUNTY and DOES 1-5)

122.    The allegations contained in paragraphs 1-69 are incorporated herein by reference.

123.    Malicious prosecution actions are not limited to suits against prosecutors but may be brought against other persons who have wrongfully caused the charges to be filed.  Here, MATA, MORELAND, ROMERO, GUERRY and DOES 1-5 participated in and contributed to the decision to file the criminal charges against Mr. FREEMAN without even the most basic investigation.  In fact, they were the driving force behind an arraignment on murder charges only two days after Mr. FREEMAN's initial arrest.  The criminal filing was not the result of an independent determination on the part of the prosecutor.  It was rammed through by those defendants who participated in the investigation and filed a report that resulted in the initiation of proceedings, and thus MATA,

26

COMPLAINT FOR DAMAGES

MORELAND, GUERRY, and ROMERO are personally liable for the damages to Mr. FREEMAN. *See, Smiddy v. Varney,* 665 F.2d 261, 266-268 (9th Cir. 1981), Civil Code §52.1; ROMERO and GUERRY rammed the criminal filing through by their knowingly wrongful and bad faith conduct as described herein and pressuring the prosecutor to file these unsubstantiated charges such that she could not exercise her independent judgment, did not have time to exercise her independent judgment.

124.    The state immunity provisions provided in Sections 821.6, 844.6, and 845.6 of the Government Code shall not apply to any cause of action brought against any peace officer or custodial officer…, or directly against a public entity that employs a peace officer or custodial officer under the Bane Act.  Civil Code §52.1(n).

125.    The prior criminal proceedings against Mr. FREEMAN terminated in acquittals in the FIRST TRIAL and the SECOND TRIAL and thus were favorable terminations in his favor.

126.    MATA, MORELAND, ROMERO, and GUERRY initiated criminal proceedings against Mr. FREEMAN on the basis of their intentional and knowingly false accusations, and pursuit of an unsubstantiated criminal case without probable cause, against Mr. FREEMAN, and other malicious conduct as described herein which resulted in the FIRST TRIAL.

127.    There was even less reasonable suspicion or probable cause to pursue the Involuntary Manslaughter charge for the second time at the SECOND TRIAL as described herein, and the prosecutor filed it anyway, propelled by the scant investigation of MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5, and bad faith or malice against Mr. FREEMAN.

128.    The conduct of defendants alleged herein constituted interference (or attempted interference) by threats, intimidation, or coercion, with the exercise of enjoyment by Mr. FREEMAN of his rights secured by the Constitution or laws of the State of California, including interference with

rights to be secure in his person and free from unlawful arrest under the Cal. Const. Art. 1, sec. 13 as well as Cal. Civ. Code §43, and Fourth Amendment of the U.S. Constitution.

129.   At all times herein mentioned, MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 acted with malice and without probable cause and did so for the purpose of denying Mr. FREEMAN his constitutional rights to life, liberty, property, and his personal interest in freedom from unjustifiable litigation.

130.   The criminal proceedings against Mr. FREEMAN initiated by MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 were undertaken in bad faith on the basis of their intentional and knowingly false accusations, vindictiveness, lack of evidence, and other malicious conduct.

131.   Defendants caused, allowed, consented to, and/or personally participated in the events which led to the prosecution of Mr. FREEMAN twice (FIRST TRIAL, SECOND TRIAL) and are jointly and severally liable for the damages caused to him.

132.   Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 pursuant to section 815.2(a) of the California Gov't. Code which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

133.   As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN spent 484 days behind bars, unable to post the bail amount, was wrongfully prosecuted twice, suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of enjoyment of life, damage to reputation which have caused plaintiff to sustain damages in a sum to be determined at trial.

COMPLAINT FOR DAMAGES

134.    The conduct of defendants MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 was willful, wanton, malicious, and done with an evil motive and intent or a reckless disregard for the possibility of violating the federally protected rights of Mr. FREEMAN and constitutes the type of despicable conduct that no civilized society should be forced to endure and therefore warrants the imposition of exemplary and punitive damages. *Smith v. Wade,* 461 U.S. 30 (1983).

135.    By reason of the foregoing allegations, plaintiff was required to retain counsel to institute and prosecute this action and is entitled to a reasonable sum for attorney's fees pursuant to the Bane Act.

**SIXTH CAUSE OF ACTION**

**False Arrest, False Imprisonment**

**(Against MATA, MORELAND, ROMERO, GUERRY, COUNTY and DOES 1 to 5)**

136.    The allegations contained in paragraphs 1-69 are incorporated herein by reference.

137.    The actions of defendants MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 wrongfully deprived Plaintiff of his liberty in violation of California law.  Plaintiff was detained, arrested and/or incarcerated against his will for an unreasonable time without probable cause.

138.    Where police officers act maliciously or with a reckless disregard for the rights of an arrested person, they are liable for damages suffered by the arrested person even after the district attorney files charges if the presumption of independent judgment by the district attorney is rebutted. *Asgari v. City of Los Angeles,* 15 Cal.4th 744, 751 (1997).  If such independent judgment is rebutted, police officers will not be immunized from plaintiff's false arrest and false imprisonment damages after the filing of the criminal complaint. *Id.* at 752.

29

COMPLAINT FOR DAMAGES

139.   Gov't. Code §820.4 which grants immunity for a public employee's "act or omission, exercising due care, in the execution or enforcement of any law," states, "Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

140.   The presumption of the prosecutor's exercise of independent judgment is rebutted because she was pressured or caused by MATA, MORELAND, ROMERO, GUERRY, and DOES 1-5 to act contrary to her independent judgment; they presented information to her that was skewed, unsubstantiated, concealing evidence, and/or false, based on the scantest of investigations as detailed hereinabove.

141.   Despite having no reasonable evidence, circumstantial or otherwise, (probable cause) to continue to prosecute Mr. FREEMAN after he was acquitted in the FIRST TRIAL July 8, 2021, and relying on the same faulty information and investigation of MATA, JULIAN, ROMERO, GUERRY, and DOES 1-5, which led to it, he continued to be detained for 14 more days before he was charged and arraigned again on July 22, 2021.

142.   Defendant COUNTY is vicariously liable for the wrongful acts of MATA, MORELAND, GUERRY, ROMERO and DOES 1-5 pursuant to section 815.2(a) of the California Gov't. Code which provides that a public entity is liable for the injuries caused by its employees within the scope of employment if the employee's act would subject him or her to liability.

143.   As a direct and proximate result of the aforementioned conduct, Mr. FREEMAN unlawfully spent another 14 days behind bars before he was arraigned on charges again and suffered a loss of liberty, suffered emotional distress, great mental and physical pain and suffering, anguish, fright, nervousness, anxiety, shock, humiliation, indignity, embarassment, apprehension, loss of enjoyment of life, damage to reputation which have caused plaintiff to sustain damages in a sum to be determined at trial.

COMPLAINT FOR DAMAGES

**WHEREFORE,** plaintiff prays for judgment as follows:

1.  For general and special/compensatory damages according to proof;

2.  For prejudgment interest from July 19, 2020, or as allowed by law;

3.  For punitive and exemplary damages against all defendants except COUNTY;

4.  For costs of suit incurred in this action;

5.  For attorney's fees as provided by 42 U.S.C. §1988;

6.  For attorney's fees as provided by the California Bane Act.

7.  For treble damages as provided by the California Bane Act, if applicable.

8.  For such other and further relief as this Court deems just and proper

Dated:  October 2, 2022                      LAW OFFICES OF CLAUDIA C. BOHORQUEZ


                                             By:___/s/ Claudia Bohorquez_____
                                                Claudia C. Bohorquez, Esq.
                                                Attorneys for Plaintiff


## DEMAND FOR JURY TRIAL

        Plaintiff hereby demands a trial by jury.


Dated: October 2, 2022                       LAW OFFICES OF CLAUDIA C. BOHORQUEZ


                                             By:___/s/ Claudia Bohorquez_____
                                                Claudia C. Bohorquez, Esq.
                                                Attorney for Plaintiff

31
COMPLAINT FOR DAMAGES